(No. 11835.—Decree affirmed.)

MARY GENDUSO, Defendant in Error, *vs.* MARTIN GENDUSO, Plaintiff in Error.

*Opinion filed June 20, 1918—Rehearing denied October 2, 1918.*

APPEALS AND ERRORS—*when decree requiring husband to convey land to his former wife must be affirmed.* A decree requiring a husband to convey to his former wife an undivided half interest in property must be affirmed, where the preponderance of the evidence shows that, notwithstanding there was a written contract by the owner of the land to convey the same to the husband and wife as joint purchasers, the husband procured the conveyance to be made to himself, alone.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. JAMES S. BAUME, Judge, presiding.

ROY F. HALL, for plaintiff in error.

B. A. KNIGHT, for defendant in error.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Defendant in error, Mary Genduso, divorced wife of plaintiff in error, Martin Genduso, filed her bill June 19, 1916, in the circuit court of Winnebago county against the plaintiff in error to compel him to convey to her an undivided interest in part of lot 6, block 9, in Crosby's addition to Rockford. She alleged in her bill that she and plaintiff in error entered into a contract of purchase of the property with Selma Segurd on April 20, 1915, while they were husband and wife; that payments amounting to $1400 were made on said contract from the wages of their joint labor; that the lot was purchased for $3000 subject to a mortgage of $1400; that she was divorced from plaintiff in error June 8, 1916; that up to the time of their divorce there was due on the contract about $200; that Selma Segurd on July 22, 1915, sold her interest in the contract

and in the premises to Carrie L. Rapp and executed a warranty deed to said property, leaving the name of the grantee blank; that on or about June 10, 1916, the name of plaintiff in error was inserted in said deed as the grantee without the knowledge or consent of defendant in error; that the deed to the property was recorded June 12, 1916, and that plaintiff in error holds the title in his name subject to said mortgage and to a further mortgage of $190 and holds an undivided one-half thereof in trust for defendant in error and should be required to convey the same to her. In his answer plaintiff in error denied that they had both entered into the contract for the purchase of said property and denied that payments on the contract had been made from the wages of their joint labor. He neither admitted nor denied that Selma Segurd had sold the contract to Carrie L. Rapp and delivered to her a deed in blank, as alleged, and neither admitted nor denied that his name was written in said deed as grantee without the knowledge or consent of defendant in error, and called for strict proof of the same. A trial was had and evidence was heard by the chancellor in open court, who rendered a decree in accordance with the prayer of the bill. Incorporated in the decree were findings of the court that the property mentioned in the bill was purchased by the parties under a written contract as alleged in the bill; that plaintiff in error obtained title by deed to the premises solely to himself and that the deed should have been made to plaintiff in error and defendant in error jointly. An accounting was ordered between the parties as to moneys advanced by plaintiff in error on the undivided one-half interest decreed to defendant in error and that he have a lien on said one-half interest of the premises for the payment of the same. The decree ordered plaintiff in error to convey to defendant in error the undivided one-half interest in the property, subject to said liens or the portions thereof ordered paid by defendant in error, and plaintiff in error was ordered to pay the

costs of suit. In case of the failure of plaintiff in error to execute the deed the master in chancery was ordered to do so. To review that decree this writ of error is prosecuted.

The uncontradicted evidence in the record shows that plaintiff in error and defendant in error were married in October, 1908. Defendant in error had no money or property at that time and plaintiff in error was possessed of about $300 which he had saved from his labors. He was employed at $2.40 a day. He invested his money in two lots, which were later deeded by him to a physician to pay for medical treatment of defendant in error. Prior to the time the contract in question was entered into plaintiff in error had purchased other property and had paid for it on the installment plan. According to his testimony he owned some property known as the Benton street property, which had been paid for by him on the installment plan and was sold by him to a man named Peacock, who gave a contract to plaintiff in error to pay for the property in monthly installments. According to the testimony of defendant in error the Peacock contract was made to plaintiff in error and herself, or to plaintiff in error "and his wife," but the evidence in the record is more corroborative of plaintiff in error and shows that the contract was made solely to him. This contract was traded to Selma Segurd as part payment on the property in question in this suit, the value of the Benton street property being fixed at $1240. This left a balance to be paid to Mrs. Segurd of $360 and was to be paid in monthly payments of $20 each. The property was renting for $20 per month and the rent was used by plaintiff in error to make the payments on the contract. Plaintiff in error also paid interest, insurance and taxes from his earnings. In July, 1915, Mrs. Segurd sold the contract for this property to Carrie L. Rapp, assigning the same in blank, and delivered to her a warranty deed to the property in which the name of the grantee was left blank. It appears from the original deed incorporated in the record and from the

testimony of expert witnesses who examined it under a high-power magnifying glass, that said deed originally had as grantee therein the name Carrie L. Rapp, which had been erased and the name of Martin Genduso substituted and written over the erasure. Plaintiff in error paid to Mrs. Rapp the balance due on his contract of purchase through Frank E. Maynard, an attorney who was looking after the matter for him. Maynard sent a party to Mrs. Rapp with the money, with directions to send the contract and the deed to him for plaintiff in error. According to the testimony of Maynard, Mrs. Rapp authorized him to write in the deed the name of plaintiff in error as grantee, the deed being the same deed delivered to her by Mrs. Segurd, and he did as directed by her. The evidence also showed that Mrs. Segurd had authorized the writing of the name of the proper grantee in the deed delivered by her to Mrs. Rapp, and there is no claim made to the property by Mrs. Segurd, Mrs. Rapp or any other person except plaintiff in error and defendant in error.

At the time plaintiff in error contracted with Selma Segurd for the property in question the contract was evidenced by a written instrument executed in duplicate. The original contract is certified to this court by two exhibits, known in the record as exhibits Nos. 5 and 6 of defendant in error. The evidence in the record clearly shows that the contract was drawn by an attorney, L. M. Green, who was a witness in this case, and that he wrote it on a typewriter, ready for the signatures of the parties, the typewriter producing what he calls the original, which is known as exhibit No. 5, and at the same time, by the use of a black carbon, producing the copy known as exhibit No. 6. As we view the record, Green gives the most correct and reliable testimony concerning these two exhibits up to the time he delivered them over to the parties. According to his testimony, after he had written out this contract in duplicate both copies were signed by plaintiff in error and Selma

Segurd, exhibit No. 5 being delivered to plaintiff in error, and exhibit No. 6, which was the carbon copy, being delivered to Adam I. Wood, a real estate broker who negotiated the trade between plaintiff in error and Mrs. Segurd, and Wood delivered exhibit No. 6 to the Third National Bank for Mrs. Segurd. At this time both copies of the contract were signed only by plaintiff in error and Mrs. Segurd, the name of the latter being the first name signed to the contract. The real contest in the evidence is as to what took place after the contract was written by Green and signed and delivered as aforesaid.

According to the evidence of defendant in error, plaintiff in error, after taking his copy of the contract home with him, told his wife of the making of the contract and that it was made out in his name. She objected to the contract and told him that she would not sign a deed to the Benton street property unless he had the contract fixed so that the agreement would read that the property in question was to be conveyed to him and her jointly. According to her testimony he then assented to have the contract changed according to her wishes. The evidence is reasonably clear that in order to clear up this disagreement between plaintiff in error and defendant in error, plaintiff in error had W. C. Hute, another real estate man who helped to make this deal, obtain the duplicate contract and take it to the home of plaintiff in error, and there defendant in error, in the presence of plaintiff in error and Hute, signed her name as the third name to the contract. She testified positively that exhibits Nos. 5 and 6 were both then and there produced by Hute, and at the time she signed them both contained in the upper part of the contract her name as one of the parties to whom the property should be deeded by Mrs. Segurd when the payments were made, and that when Hute took exhibit No. 6 away it was signed by her and she was named therein as one of the purchasers, and that exhibit No. 5 was left at her home to be held by plaintiff in error

and herself, and that these exhibits were the only instruments signed by her in the transaction between herself and plaintiff in error and Mrs. Segurd concerning the property in question. Her testimony is denied *in toto* by plaintiff in error, his testimony being, in substance, that defendant in error never signed either of the exhibits at any time, and that there never was any arrangement, talk or agreement between her and him to the effect that she should sign the contract or have any interest in the property. He corroborated her in one particular, however, when he was first upon the witness stand, by testifying that exhibits Nos. 5 and 6 were the only instruments or agreements signed by him in the transaction. Later, Hute testified that defendant in error did sign some instrument at her house and in the presence of himself and plaintiff in error, but he further stated in his testimony that the instrument signed by plaintiff in error and defendant in error at that time was a mere proposition between Mrs. Segurd and the Gendusos and not the contract in question.

We are thoroughly satisfied from the evidence that the defendant in error did sign these exhibits, as she testified, at her house and in the presence of her husband and Hute. The exhibits themselves constitute the contract in duplicate for the purchase and sale of the property, such as is usually made where the deed and the payments therefor are to be made later. That her name did actually appear in the two instruments in duplicate,—in the body of the instruments as one of the purchasers and at the foot as one of the contracting parties,—and that the two instruments had been re-modeled or re-written on a different typewriter from the one originally used by Green, appears from the testimony of a number of witnesses. Josie Swanson, a sister of defendant in error, and Melvin Hancock, her brother, both testified that they saw exhibit No. 5 at plaintiff in error's house after the time the defendant in error claims to have signed it; that said exhibit contained her name as one of

the purchasers in the body of the instrument, and that her name appeared as the third name and as a party to the contract at the place where the parties signed. Her mother, Alma Hancock, testified to the same thing, and also testified that she made payments on the contract for plaintiff in error which were indorsed on both exhibits; that both instruments had defendant in error's name on them as purchaser and were signed by her as a party; that she heard plaintiff in error tell defendant in error that the contract was first prepared with only his name as purchaser, and that he would have the same changed so that the agreement would read that the property was to be conveyed to both.

In addition to the foregoing, the evidence clearly discloses that until this suit was brought exhibit No. 5 remained in the possession of plaintiff in error at his home and exhibit No. 6 continued in possession of the bank for Selma Segurd until she transferred her interest to Mrs. Rapp, when she assigned and delivered the same to her. Mrs. Rapp continued to hold the instrument until it was delivered to Maynard, the attorney for plaintiff in error. In other words, exhibit No. 6 was never shown to have been in any other hands except as above shown until this suit was brought, and defendant in error never had an opportunity to make any change in the instrument after it was taken by Hute and delivered to the bank. Within three days after this suit was brought plaintiff in error delivered both exhibits to R. J. Cannell for examination. Plaintiff in error was negotiating with him with a view to employing him as attorney to defend this suit. Cannell had examined the bill at the court house, and when plaintiff in error delivered him the exhibits he examined them closely, as he testified, with a view of ascertaining who were the parties to the contract, and who, according to the contract, were named as purchasers. He was requested by plaintiff in error to examine them with a view to determine what his rights were according to the contract. Cannell states

positively in his testimony that both exhibits contained the names of plaintiff in error and defendant in error in the body of the contract as purchasers and that they were both signed by Selma Segurd, plaintiff in error and defendant in error in the order named; that exhibit No. 6 at that time contained no erasures in the body of the contract where the names of the purchasers were written, and that there was no erasure at the foot and after the signature of plaintiff in error; that he delivered the exhibits to Maynard, after he had held them for two days, in the condition they were when he obtained them. There is no reason to doubt the testimony of Cannell in the least. His examination of the contract was for the very purpose of ascertaining the rights of plaintiff in error and defendant in error according to its provisions. It is a significant fact, also, that although plaintiff in error had interviewed him and caused him to make this examination with the intention of employing him to defend this suit yet he was not retained.

Defendant in error's version that both exhibits were changed and signed by her as she claims was further corroborated by the exhibits themselves. Exhibit No. 5, (the one held by plaintiff in error,) when produced at the trial, was in exactly the same condition she testified it was in when she signed it. Her name appears in the body of it with that of plaintiff in error as a purchaser, (the name being written in by a different typewriter than was used before,) and it was signed by her, her signature being the third on it. The pronouns "their" and "them" appear in two blank spaces on the contract referring to defendant in error and plaintiff in error as parties to the contract. Those pronouns were also written by a typewriter, and it is evident they were substituted for other words which were apparently erased. No other erasure appears on this instrument. In the body of exhibit No. 6 only the name of Martin Genduso appears as purchaser, but right after his name in that part of the instrument there is a heavy erasure almost two

284 — 22

inches long, where apparently another name had been written and afterward erased. Under the signature of Martin Genduso at the foot of the instrument there is another heavy erasure about three inches long, where apparently another signature had been written and then erased. The name of defendant in error nowhere appears therein as one of the contracting parties. All the witnesses agree that such erasures were made. The testimony of Cannell is, in substance, that the erasures were not on the exhibit when he delivered it to Maynard. The testimony of J. H. Rapp, husband of Carrie L. Rapp, is that those erasures were not on exhibit No. 6 while in the hands of Mrs. Rapp. It also appears from the exhibit that the pronouns "their" and "them" that were placed in exhibit No. 5, as aforesaid, are erased in exhibit No. 6 from the blank spaces in the printed part of the contract where they should occur to correspond with exhibit No. 5. It does not appear from the evidence who changed the exhibits by making the additions with the typewriter before defendant in error signed them. It does not appear who made the erasures in exhibit No. 6 after the exhibits were delivered by Cannell to Maynard. It does appear that such erasures were made after they were delivered to Maynard and while in his possession or in the possession of plaintiff in error.

There was other evidence corroborative of the testimony of plaintiff in error given by witnesses of good standing. It is not necessary to discuss or refer to that evidence here. Those witnesses had not the opportunity to know of the changes that were made in these exhibits after they were signed by plaintiff in error and Selma Segurd. For the reasons already given we are clearly of the opinion that the chancellor's findings are supported by the overwhelming weight of the evidence.

As the result of this suit was made to depend solely upon the issue whether or not the exhibits or duplicate contract as finally executed and delivered provided that the

property in question was to be conveyed jointly to plaintiff in error and defendant in error by Selma Segurd upon the making to her of the payments therein mentioned, it necessarily follows from what we have already said that the decree of the circuit court must be affirmed. The evidence in the record does not tend to show a resulting trust in the property in favor of defendant in error, and that is not the theory upon which she based her suit. The evidence does clearly show that by the contract as finally signed and delivered the defendant in error was to be a joint purchaser. There is no further or other reason shown or claimed by plaintiff in error why defendant in error is not entitled to have this contract enforced as made, except the defense attempted that she was not a party to the contract and therefore not entitled to any interest in the property.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*